UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SUSAN ALLAN and JESSICA WILSON,

    Plaintiffs,

v.                                                                                                  Case No. 2:14-CV-54

PENNSYLVANIA HIGHER                                              HON. GORDON J. QUIST
EDUCATION ASSISTANCE AGENCY
d/b/a AMERICAN EDUCATION
SERVICES,

    Defendants.
_____/

## OPINION REGARDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs, Susan Allan and Jessica Wilson, sued Defendant, Pennsylvania Higher Education Assistance Agency (PHEAA), alleging that PHEAA violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq.*, by calling Plaintiffs' cell phones 353 times using an automatic telephone dialing system (ATDS) or an artificial or prerecorded voice without their consent. Plaintiffs moved for summary judgment, requesting that the Court award at least the statutory minimum of $500 for each violation, for a total of $176,500, but asking the Court to exercise its discretion to award treble damages for each violation for a total of $529,500. (ECF No. 28.) PHEAA responded, arguing (1) that the system used to dial Plaintiffs' cell phones does not fit the statutory definition of an ATDS; (2) that Plaintiffs waived the right to recover any damages for "pre-recorded calls" because the allegation appears for the first time in Plaintiffs' motion for summary judgment; and (3) that even if the Court finds that PHEAA violated the TCPA, treble damages are not appropriate. (ECF No. 37.)

1

## I. BACKGROUND

PHEAA is the servicer for Wilson's student loans, and Allan was the co-signer for Wilson's student loans as well as the student loans of a third person. PHEAA claims, and Plaintiffs do not appear to dispute, that Plaintiffs gave their consent for PHEAA to call their cell phones using an ATDS or an artificial or prerecorded voice when Plaintiffs submitted a written request for forbearance on the loans. However, on October 4, 2013, Allan spoke with a representative of PHEAA and requested that PHEAA stop calling her on her cell phone. (Pls.' Ex. C, Def.'s Resp. to Req. for Admis., ECF No. 30 at PageID.231.) Then, on October 15, 2013, Wilson spoke with a representative of PHEAA and likewise requested that PHEAA stop calling her on her cell phone. (*Id.*)

PHEAA called Allan's cell phone regarding student loans 219 times after October 4, 2013, and Wilson's cell phone 134 times after October 15, 2013. (Pls.' Ex. F, ECF Nos. 31-32.) PHEAA used a system called the Avaya Proactive Contact system to place each of the calls. Christopher Krobath, PHEAA's Senior Manager of Workflow and Operational Support, explained how the Avaya system operates:

> PHEAA's system uses a calling list that is created daily by an automated batch process that determines what subset of accountholders qualifies for telephonic contact that day, based on, among other things, amounts owed, delinquency status and prior contacts. The calling list is not randomly generated. Each morning a new and unique calling list is downloaded to the Avaya equipment used in connection with making the calls to the accountholders who will be called based on the selection criteria outlined above. A human intervenes at that point to create calling campaigns for the day. Jobs are started by the person setting up the daily workflow. The dialing system places the calls and connects them to operators when a voice is detected.

(Def.'s Ex. 2, Krobath Decl., ECF No. 37-2 at PageID.333.)

## II. MOTION STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734–35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813–14 (6th Cir. 2006).

While a moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

3

### III. ANALYSIS

The Court agrees with Plaintiffs that the Avaya system that PHEAA uses qualifies as an ATDS, and that PHEAA committed several violations of the TCPA, but the Court finds the violations entitle Plaintiffs to statutory damages, not treble damages.

In relevant part, the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to a cell phone. 47 U.S.C. § 227(b)(1)(A)(iii). The term "automatic telephone dialing system" is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The parties dispute whether PHEAA's Avaya system qualifies as an ATDS.

Since the enactment of the TCPA in 1991, the Federal Communications Commission (FCC) has issued multiple orders interpreting the TCPA's definition of an ATDS. The D.C. Circuit Court of Appeals reviewed several challenges to the FCC's rulings and vacated the FCC's interpretations. *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). In particular, the D.C. Circuit focused on the FCC's interpretation of the term "capacity" and found that the TCPA is not violated when a call is made from equipment with the capacity to function as an autodialer if autodialer features are not used to make the call. *Id*. at 695.

The D.C. Circuit also addressed challenges to the FCC's interpretation of what functions equipment must possess to qualify as an autodialer, which is the focus of this case. As the D.C. Circuit noted: "A basic question raised by the statutory definition is whether a device must *itself* have the ability to generate random or sequential telephone numbers to be dialed. Or is it enough if the device can call from a database of telephone numbers generated elsewhere?" *Id*. at 701

(italics in original).  The D.C. Circuit vacated the FCC's ruling on the matter because the FCC's "ruling appear[ed] to be of two minds on the issue," thus leaving the public with a "lack of clarity about which functions qualify a device as an autodialer."  *Id*. at 701, 703.  But the D.C. Circuit noted that "it might be permissible . . . to adopt either interpretation."  *Id*. at 702-03.

The only circuit court to analyze the issue in depth since the D.C. Circuit's ruling in *ACA International* is the Ninth Circuit.  The Ninth Circuit explained: "Because the D.C. Circuit vacated the FCC's interpretation of what sort of device qualified as an ATDS, only the statutory definition of ATDS as set forth by Congress in 1991 remains."  *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1049–50 (9th Cir. 2018), *cert. dismissed,* 139 S. Ct. 1289 (2019).  Therefore, the Ninth Circuit relied on traditional principles of statutory construction to interpret the meaning of an ATDS under the TCPA.

The Ninth Circuit found the statutory definition of ATDS to be ambiguous, citing the D.C. Circuit's finding that alternate interpretations "might be permissible."  *Id*. at 1051 (citing *ACA Int'l*, 885 F.3d at 702-03).  An ATDS is simply defined as "equipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  However, the question remains whether the phrase "using a random or sequential number generator" modifies only the verb "produce" or modifies both "store" and "produce."  In other words, is an ATDS defined as "equipment which has the capacity (A) to [i] store [telephone numbers to be called] or [ii] produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers," or as "equipment which has the capacity (A) to store [telephone numbers produced using a random or sequential number generator]; or [to] produce telephone numbers to be called,

5

using a random or sequential number generator; and (B) to dial such numbers[?]" *Marks*, 904 F.3d at 1050-51.

The Ninth Circuit looked to the "context and the structure of the statutory scheme" to resolve that question. *Id*. at 1051. The Ninth Circuit pointed out that certain provisions of the TCPA allow an ATDS to call select numbers—for instance, § 227(b)(1)(A) permits the use of an autodialer for a call "made with the prior express consent of the called party." But "[t]o take advantage of this permitted use, an autodialer would have to dial from a list of phone numbers of persons who had consented to such calls, rather than merely dialing a block of random or sequential numbers." *Id.* Additionally, Congress amended § 227(b)(1)(A)(iii) in 2015 to exempt the use of an ATDS to make calls "solely to collect a debt owed to or guaranteed by the United States." The 2015 amendment presumes a definition of an ATDS that includes equipment dialing from a list of individuals. *Id.* at 1051-52. Thus, the Ninth Circuit "conclude[d] that the statutory definition of ATDS includes a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator." *Id*. at 1043.

The Court agrees with the Ninth Circuit's analysis, and because there is no question that the Avaya system that PHEAA uses stores telephone numbers to be called and automatically dials those numbers, the system qualifies as an ATDS. The remaining questions relate to the number of violations and the damages.

While Plaintiffs may have consented to receive calls from PHEAA when seeking forbearance on the student loans, Allan revoked consent on October 4, 2013, and Wilson revoked consent on October 15, 2013. *See ACA Int'l*, 885 F.3d at 695 (sustaining the FCC's ruling "that a party can revoke consent through any reasonable means clearly expressing a desire to receive no further calls or texts"). PHEAA's Excel spreadsheets, offered by Plaintiffs, show that the Avaya

system placed calls to Allan's cell phone 219 times after she revoked consent and to Wilson's cell phone 134 times after she revoked consent, for a total of 353 violations of the TCPA. (Pls.' Ex. F, ECF Nos. 31-32.) PHEAA has offered no evidence to contradict those figures.

PHEAA argues that Plaintiffs should not be allowed to recover any damages for 30 pre-recorded voicemails that Allan received because Plaintiffs identified those potential violations for the first time in their motion for summary judgment. However, PHEAA's argument does not change anything. Plaintiffs simply offered evidence that for 30 of the calls that were placed to Allan's cell phone using an autodialer, PHEAA also left a voicemail using a pre-recorded voice. In other words, the 30 pre-recorded voicemails were included in the 353 violations and were not alleged as additional violations, only as an alternative theory of recovery.

Finally, the Court has to determine the amount of damages. Under the TCPA, a plaintiff may bring "an action to recover for actual monetary loss from [a violation of the TCPA], or to receive $500 in damages for each such violation, whichever is greater," 47 U.S.C. § 227(b)(3)(B). But if the Court finds that the defendant "willfully or knowingly violated" the TCPA, "the court may, in its discretion, increase the amount of the award" to as much as $1500 per violation. 47 U.S.C. § 227(b)(3).

Plaintiffs argue that PHEAA's conduct constituted willful and knowing violations of the TCPA because PHEAA continued calling Plaintiffs using an ATDS after they revoked consent to receive such calls. However, that is simply what is required to violate the statute. Moreover, at the time that PHEAA acted in violation of the statute, the FCC had equivocated on whether the type of system PHEAA used qualified as an ATDS. Therefore, the Court finds that PHEAA did not violate the TCPA willfully or knowingly, and will award statutory damages of $500 per violation.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs' motion for summary judgment and award Plaintiffs $176,500 for PHEAA's 353 TCPA violations.

An Order consistent with this Opinion will enter.


Dated: August 19, 2019                              /s/ Gordon J. Quist
                                                                    GORDON J. QUIST
                                                UNITED STATES DISTRICT JUDGE